[No. 12367. Department Two. September 27, 1915.]

# HOWARD C. PARK, *Appellant*, v. GEORGE B. NEWELL *et al., Respondents.*[1]

BILLS AND NOTES—HOLDER IN DUE COURSE—EVIDENCE—SUFFICIENCY. Findings that an indorsee of notes fraudulently obtained in payment for a stallion, was not a holder in due course, although he testified that he was, are sustained where it appears that he bought the notes as a broker at a small discount, that they ran for a long term of years at a low rate of interest, that the makers were persons of unknown financial ability residing in a distant state, and the indorsee failed to take steps to charge the indorser with liability and was wholly indifferent as to steps taken for their collection.

CANCELLATION OF INSTRUMENTS — FRAUD — DEFENSES — ESTOPPEL. The cancellation of notes, given in payment for a stallion, procured by misrepresentation and deception and void in the hands of the original holder, may be decreed in an action on the notes under a defense of equitable cognizance; nor would there be any estoppel by payments made on the acknowledged price of the horse under an agreement with the vendor and original holder of the notes.

BILLS AND NOTES—ATTORNEY'S FEES—CONTRACTS. In an action on notes given for the purchase price of a stallion, in which the court found the notes void, but allowed recovery for the acknowledged price of the horse, the attorney's fee stipulated for in the notes cannot be recovered, the original agreement making no provision therefor.

[1]Reported in 151 Pac. 783.

SALES—ACTION FOR PRICE—DEFENSE—PAYMENT. Where the extent of the liability of several purchasers of a stallion was their proportionate share of the price, payment thereof by part of the purchasers is a complete defense, as to them, to recovery for the price.

COSTS—TAXATION—SERVICE OF SUMMONS—STATUTES. Under Rem. & Bal. Code, § 225, authorizing service of a summons to be made by the sheriff or by some person over twenty-one years of age who is competent to be a witness in the action other than the plaintiff, and Id., § 482, limiting costs for this item to a case where it is paid to a county officer, costs cannot be recovered for service by a constable not directed to make the service by the superior court.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered November 17, 1913, upon findings in favor of the defendants, in an action on promissory notes, tried to the court. Affirmed.

*Tolman & King*, for appellant.

*Charles P. Lund*, for respondents.

FULLERTON, J.—This action was instituted in the court below by the appellant, as plaintiff, against the respondents, as defendants, to recover a balance due upon four several promissory notes of $900 each, given by the respondents to McLaughlin Brothers, a copartnership, and by that firm indorsed and delivered to the appellant before maturity.

The notes were executed and delivered under the following circumstances. McLaughlin Brothers were dealers in stallions, and induced certain farmers residing in the vicinity of Deer Park, in this state, to jointly purchase a stallion, each to take one share, or a twelfth interest in the animal. An agreement was drawn up and partially signed by the intending purchasers to that effect. Later on, the horse was delivered to one of their number, and the notes in question were individually presented to the different members entering into the agreement of purchase for signature. Certain of the parties signed the notes on the promise of the agent of McLaughlin Brothers, having the matter in charge, that the notes would not be delivered or considered valid until signed

by all of the parties to the agreement, and would then be treated as paid as to any signer who should pay thereon the sum of $300 and interest. The agent was unable to procure the signatures of all of the persons entering into the original agreement, and in lieu thereof procured the signatures of others sufficient to make up the group, but who did not have the same financial standing as those refusing to sign. On learning that the notes had not been signed by the persons entering into the original agreement, certain of the signers of the notes brought an action in the superior court of Spokane county against McLaughlin Brothers to restrain them from transferring the notes, and obtained a temporary injunction to that effect. Pending the final disposition of the action, an agreement of settlement was entered into between the plaintiffs in the action and the representatives of McLaughlin Brothers, and the action dismissed. The agreement was reduced to writing, and, after certain recitals, provided:

"Now, therefore, for and in consideration of the sum of one dollar ($1) and other good and valuable considerations, the said parties of the first part do hereby agree to and with the said parties of the second part that they will save the said parties of the second part harmless from any and all payments upon said notes in excess of three hundred dollars ($300) each, that is to say, each of the said parties of the second part is to pay upon said notes the sum of three hundred dollars ($300), together with interest as called for in said notes, unless suit or action is brought upon all or any of said notes for the collection of same, then in that event the said parties of the second part who have failed to pay their three hundred dollars ($300) are to pay in addition to said three hundred dollars ($300) and interest, their proportionate part of any costs that the said parties of the first part, or their successors or the assignees of the parties of the first part of the above mentioned notes may be put to on account of said suit or action."

The appellant testified to facts tending to show that he was a holder of the notes in due course. The trial court, how-

ever, found that the assignment to him was made in the interest of the McLaughlin Brothers "in an attempt to hold each of the defendants individually liable for the entire consideration of the notes," and that the appellant took them with notice of the fact that they were void in the hands of payers thereof. The court further found that the defendants were liable upon the purchase price of the horse according to the original agreement; that is to say, that each was liable for his individual share of $300, and not one for the other; found that certain of the defendants had paid their shares in full; found that the others had paid nothing thereon; and found that the defendants were entitled to have the notes surrendered up and cancelled. Judgment was entered in accordance with the findings, and this appeal is prosecuted therefrom.

It is first assigned that the court erred in adjudging that the appellant was not a holder of the notes in due course. But while, as we have said, the appellant testified that he purchased the notes for value and in good faith before maturity, there is much shown in the record that does not agree with his statement. We shall not enter into the details of this showing. Touching only its salient features, it appears that the notes were dated at Deer Park, in this state, on June 5, 1906, and were payable in two, three, four and five years after their respective dates, at the place of date, with interest at six per centum per annum, payable annually. They were indorsed, if they are correctly copied into the record, at the time of the execution, with a payment of $375. The appellant purchased them at Columbus, Ohio, twenty-four days after their execution, paying therefor $3,100, or at a discount of $125. He was engaged in the brokerage business at the time of the purchase, afterwards becoming cashier of the Columbus National Bank. At the time of the purchase, he knew nothing of the financial standing of any of the makers, save what he learned from some general statements

made to him concerning the fact by the Mr. McLaughlin with whom he dealt in making the purchase; yet he testified on his direct examination, in answer to. the inquiry of his counsel as to whom he relied upon for payment, that he relied "primarily upon the makers" of the notes. Later, in his cross-examination, he testified that he would not have purchased the notes had not the indorsers been of good financial standing, yet again, in so far as this record discloses, he took none of the steps necessary to charge them with liability as indorsers, and they are in no manner bound thereon. In fact, he overlooked the time of the maturity of the first note and did not forward it for collection to the place of payment until some ten months after it fell due. Moreover, he thereafter manifested no interest in the collection of the notes. During the considerable period of time they were left with the bank, he made no inquiries concerning them, made no acknowledgment of the receipt of the sums collected by the bank and forwarded to him, and left the notes with the bank until the bank returned them to him of its own volition. There are other circumstances that could be mentioned bearing more or less strongly on the question, but it seems to us that the foregoing precludes us from finding that the weight of the evidence is against the conclusion of the trial court. The notes, unsecured in any manner, executed and made payable in a distant state by persons residing therein of unknown financial ability, running over a long period of time with a low rate of interest, could not have been considered a reasonably good investment for a person desiring a time loan, much less were they such paper as would appeal to a broker, who, from the nature of his business, must expect to turn them shortly at a profit to himself. When we consider with this the indifference manifested by him with regard to their payment, and his failure to follow the requirements of the statute necessary to charge the indorsers, it seems rather to favor the conclusion that the purported purchase was a

scheme to foreclose the fraud committed in their procurement, than a purchase in due course.

It is next urged that the court erred in holding the notes void and in ordering the notes to be delivered up and cancelled. But we think this objection does not merit extended discussion. The notes having been procured by misrepresentation and deception, clearly could not be valid in the hands of the original holders, and it was within the power of the court, in a proceeding of equitable cognizance, to order them cancelled. Nor was there any estoppel arising from the payments. Each of the signers of the notes recognized his individual liability to pay his proportionate share of the purchase price of the horse, and the payments were made pursuant to an agreement between them and the real owner of the notes that such a payment would satisfy the obligation.

Again, it is said that the court erred in denying the plaintiff a reasonable sum for attorney's fees according to the terms of the notes. But no recovery was allowed upon the notes. The recovery was permitted upon the original agreement which made no provision for attorney's fees.

It is next said that the court erred in adjudging that the action be dismissed as to the defendants Johnson, Iverson, and Kratzer. But each of these defendants testified that he had paid his proportionate share of the obligation in full with interest, and, concluding, as we do, that this was the extent of their individual liability, it follows as of course that no additional recovery can be had against them.

The summons in the action was served by a constable, and fees for his services were included in the cost bill filed by the plaintiff in the court below. On a motion to retax costs, made by the defendants, this item was stricken therefrom. This is assigned as error, but we think the ruling proper. Since there was no direction of the superior court to the constable to serve the summons, his right to do so is found in § 225 of Rem. & Bal. Code (P. C. 81 § 141), which author-

izes a service of summons to be made either by the sheriff of the county, or by some person over twenty-one years of age who is competent to be a witness in the action other than the plaintiff. The fee bill makes no provision for the taxation of costs of the service of a summons except when made by the sheriff, and the provision of the code allowing costs to the prevailing party seems to limit the recovery for this item only in the case it is paid to a county officer. Rem. & Bal. Code, § 482 (P. C. 81 § 1291).

Again, we think, the allowance of such a recovery is against the public policy of the state. Here the sheriff is a salaried officer, obligated to turn over to the county the fees allowed to be charged by him for the service of summonses. To allow costs to be taxed against a losing party to an action, for the service of a summons when made by a private individual, would be to encourage individuals to engage in the practice of serving summonses as a business, to the detriment of the courts themselves, and to the loss of revenue to the county.

We find no error in the judgment entered, and it will stand affirmed.

MORRIS, C. J., ELLIS, and MAIN, JJ., concur.